IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENWOOD DIVISION

| | |
|---|---|
| John Wesley Noffz, ) <br> ) <br>               Plaintiff, ) <br> ) <br>     vs. ) <br> ) <br> Austin Maintenance & Construction, ) <br> Inc. ) <br> ) <br>               Defendant. ) <br> ) | Civil Action No. 8:16-208-MGL-KFM <br><br> **REPORT OF MAGISTRATE JUDGE** |

        This matter is before the court on the defendant's motion to dismiss or, in the alternative, to stay proceedings and compel arbitration (doc. 8). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Civ. Rule 73.02(B)(2)(g) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in employment discrimination cases and submit findings and recommendations to the district court.

## BACKGROUND

        The plaintiff originally filed an action against the defendant, his former employer, on July 15, 2015, in the Greenwood County Court of Common Pleas (*see* C.A. No. 8:15-cv-3462-JMC-JDA (the "First Lawsuit"), doc. 1-1). The plaintiff's First Lawsuit contained claims of interference and retaliation in violation of the Family and Medical Leave Act ("FMLA") (*id*.) The defendant removed the First Lawsuit to this court on August 28, 2015 (*id.*, doc. 1).

        After removing the First Lawsuit, counsel for the defendant notified the plaintiff's counsel that the plaintiff and the defendant had entered into a mutually-binding mandatory arbitration agreement that covered the plaintiff's FMLA claims (*see* doc. 8-2, correspondence dated 9/21/15). Counsel for the defendant requested that the plaintiff's counsel agree to join in a motion to stay the federal court proceedings pending disposition

of the lawsuit through arbitration (*id*.)  The plaintiff's counsel agreed to join in the proposed motion, and the parties filed a joint motion to stay proceedings pending arbitration on September 25, 2015 (*see* First Lawsuit, doc. 5).  In joining in the motion, the plaintiff agreed that:

> (1)  Plaintiff and Austin entered into an Arbitration Agreement as a condition of Plaintiff's employment with Austin; (2) Pursuant to the Agreement, the parties have agreed that all disputes related to Plaintiff's employment with Austin, including, but not limited to, his claims under the Family and Medical Leave Act, shall be settled by binding arbitration; and (3) The Agreement is subject to the Federal Arbitration Act ("FAA"), and Section 3 of the FAA, 9 U.S.C. § 3, requires a stay of all further proceedings pending the submission of Plaintiff's claims to arbitration.

(*Id*.).

Pursuant to a request by the court, the plaintiff then filed a stipulation of dismissal without prejudice of the First Lawsuit to allow the parties to pursue arbitration (*see* doc. 8-3, correspondence dated 9/29/15).  The defendant incurred $1,752.00 in attorney's fees and $400.00 in costs (a total of $2,152.00) in defending the First Lawsuit (*see* doc. 8-4, Adams decl. ¶¶ 3-4).

On December 11, 2015, the plaintiff re-filed his lawsuit – alleging the same employment-based claims of interference and retaliation in violation of the FMLA that were alleged in the First Lawsuit – in the Greenwood County Court of Common Pleas (*see* doc. 1-1).  Defense counsel states that, after learning of the filing, she contacted the plaintiff's counsel to remind him of the arbitration agreement that applied to the plaintiff's claims, and the plaintiff's counsel responded that he planned to continue to pursue the plaintiff's claims in court (doc. 8-1 at 3).  The defendant then removed the instant action to this court on January 21, 2016, based upon federal question jurisdiction (doc. 1). On February 18, 2016, the defendant filed the motion to dismiss or, in the alternative, to stay proceedings and compel arbitration that is now before the court (doc. 8).   The defendant also seeks

attorney's fees and costs incurred in defending the plaintiff's First Lawsuit (*id.* at 9-10). The plaintiff filed a response in opposition to the motion on March 4, 2016 (doc. 9), and the defendant filed a reply on March 18, 2016 (doc. 14).

## **FACTS PRESENTED**

Austin Industries, Inc., the parent company of the defendant, Austin Maintenance & Construction, Inc., maintains an alternate dispute resolution policy known as "Open Door." Open Door applies to all of Austin Industries, Inc.'s subsidiary companies, including the defendant. The Open Door program is described in an exhibit attached to the declaration of Kyle Chrisman, the Director of People for Austin Industrial, Inc., that was submitted by the defendant in support of its motion (doc. 8-6, Chrisman decl., ex. A). The Open Door program applies to the defendant and its employees and allows both parties to resolve employment-related disputes more quickly and inexpensively than through litigation. The Open Door program provides for mandatory arbitration as the sole means of resolving employment-related disputes (except for work-related injury and ERISA claims) in the event that the defendant and the employee cannot resolve the dispute through the other steps in the Open Door program (*id.*). "Workplace disputes," including those raised in the instant lawsuit, are covered by the Open Door program (*id.*). Employment-related disputes are all included in the Open Door program as disputes affecting a "legally protected right," which trigger the Open Door program and the plaintiff's obligation to submit the matter to the Open Door process, including mandatory arbitration (*id.*). The Open Door further provides:

> **At-will employment**
>
> Austin is an at-will employer. Open Door establishes a mandatory program for the resolution of disputes arising from or related to employment. Neither Austin nor Open Door guarantee employment or create a contract for the employment of any person on a permanent basis for any period of time. You may leave Austin at any time for any reason. Likewise, your employment may be terminated by Austin at any time for any reason.

(*Id.*).

Arbitration under the Open Door program is conducted under the rules of the American Arbitration Association ("AAA"), and arbitrators have the authority to fully and finally settle all covered disputes between the employee and the defendant (*id.*). Additionally, the defendant bears all of the administrative costs of the arbitration other than a $50.00 processing fee borne by the plaintiff. Further, the Open Door program's arbitration obligations apply to and bind both the defendant and its employees (*id.*). The Open Door program specifically provides:

> [I]f [an employee] accept[s] or continue[s] employment with Austin after [June 1, 1996], [the employee] agree[s] to waive [his or her] right to a trial in a court of law, and [the employee] agree[s] instead to resolve all legal claims against Austin through Open Door instead of through the court system. Austin likewise waives its right to trial in a court of law and agrees to resolve such disputes through Open Door.

(*Id.*). Moreover, under the Open Door program, employees are entitled to the same remedies they would be entitled to in a court of law (*id.*).

The Open Door program is a well-publicized policy within Austin. Applicants, like the plaintiff, are informed of the Open Door program when they fill out and submit their application for employment at Austin (doc. 8-6, Chrisman decl. ¶ 4). In the instant case, the plaintiff submitted two separate employment applications to the defendant, including one application dated July 16, 2011, and one application dated September 20, 2011. Above the signature line on both of the plaintiff's employment applications, the documents state in pertinent part:

> Should I be employed by the company, I agree to abide by the terms of this application and company rules and regulations, and the company has the right to amend, modify or revoke its rules and regulations at any time. I understand that no one except the president of Austin Industries may enter into an employment contract with any person.

4

> If employed, I agree that my employment is at will, which means I can be terminated with or without notice, at any time by either Austin or me. I agree to be bound by and accept as a condition of employment the terms of Open Door, Austin's dispute resolution plan and rules, which are incorporated herein by reference. . . . I understand that Open Door requires as it as last step the binding arbitration of employment disputes regarding legally protected rights.

(Doc. 8-6, Chrisman decl. ¶ 6 & exs. B, C). The plaintiff's September 20, 2011, employment application includes the additional language in all capital letters:

> THIS AGREEMENT IS A WAIVER OF ALL RIGHTS TO CIVIL COURT ACTIONS FOR A CLAIM SUBJECT TO ARBITRATION, ONLY THE ARBITRATOR, NOT A JUDGE OR JURY, WILL DECIDE A CLAIM OR DISPUTE.

(*Id.* ¶ 6 & ex. C). Mr, Chrisman attests that, in addition to receiving notification in his employment applications, the defendant would have provided the plaintiff with a copy of the Open Door. Among other avenues, the plaintiff would have been constantly reminded of the Open Door program through the posting on the employee bulletin board, which was located by the timeclock at the work site (*id.* ¶ 7).

## APPLICABLE LAW AND ANALYSIS

The Federal Arbitration Act ("FAA") provides a federal district court with the authority to enforce an arbitration agreement by compelling parties to arbitrate their dispute. 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."). Section 2 of the FAA applies to any "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract," and it provides that the written agreements to arbitrate contained in such contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at

law or in equity for the revocation of any contract." *Id.* § 2. The United States Supreme Court has also noted a strong federal policy favoring arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

The Fourth Circuit Court of Appeals recognized the FAA's strong federal policy favoring arbitration agreements in *Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002), where the court stated, "A district court . . . has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Id.* at 500 (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001)). The court further stated: "In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision [that] purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'" *Id.* at 500-01 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)). Because "arbitration constitutes a more efficient dispute resolution process than litigation . . . 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'" *Id.* at 500 (quoting *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989)) (citing *Hightower v. GMRI, Inc.*, 272 F.3d 239, 241 (4th Cir. 2001)).

The plaintiff argues that the court should not compel arbitration because (1) the documents relied upon by the defendant expressly deny the creation of a contract and thus cannot fulfill the requirements of the FAA, and (2) the defendant reserved to itself the ability to alter, amend, modify, or revoke the agreement, which made it an illusory promise and therefore unenforceable (doc. 9 at 1-7).

The plaintiff first argues that the language in the Open Door and in his employment applications that disclaims any employment contract for a definite term invalidates the arbitration agreement (doc. 9 at 2-5). In support of his first argument, the plaintiff relies on a recent decision of the Fourth Circuit Court of Appeals, *Lorenzo v. Prime Commc'ns*, 806 F.3d 777 (4th Cir. 2015).  In *Lorenzo*, the plaintiff-employee signed a form acknowledging that she received an employment handbook containing an arbitration provision. *Id*. at 780. The defendant-employer argued that the acknowledgment together with plaintiff's continued employment constituted the employee's agreement to be bound by an arbitration agreement. *Id*. at 781. As noted by the defendant, the Fourth Circuit rejected this argument based on a key distinguishing fact that is not present here: in addition to signing a form acknowledging that she received an employment handbook, the plaintiff-employee also signed an acknowledgment form providing that the terms of the employee handbook, including its arbitration provision, were guidelines only and did not create any binding commitments. *Id*. at 782. Applying North Carolina contract law, the Fourth Circuit concluded that there was a lack of meeting of the minds or mutual assent between the parties because "[a]ny *implied* assent that might have been created by [the plaintiff-employee's] receipt and review of the [h]andbook and by her continued employment was nullified by the *express* agreement of the parties not to be bound by any of the Handbook's terms." *Id*. (emphasis in original) (comparing *Snyder v. Freeman*, 266 S.E.2d 593, 602-03 (N.C. 1980) (explaining the North Carolina legal principle "that where there is an express contract between parties, there can be no implied contract between them covering the same subject matter dealt with in the express agreement")).

Here, as the defendant argues, unlike the language at issue in *Lorenzo*, the contract disclaiming language cited in the plaintiff's response establishes only that there is no employment contract for a set period, not that there is no agreement to arbitrate. Further to the point, reading the language focused on by the plaintiff in the Open Door in its entirety

7

and in context, it is apparent that the defendant is emphasizing the at-will nature of employment with the Company in an effort to avoid claims by employees that they must remain employed for a set period of time. As noted by the defendant, both this court and the Fourth Circuit have enforced agreements to arbitrate that contained similar language. *See e.g., Cox v. Assisted Living Concepts, Inc.*, C.A. No. 6:13-747-JMC-KFM, 2014 WL 1094394, (D.S.C. March 18, 2014) (holding that the fact that the handbook indicates that it does not alter at-will employment relationship with the defendant does not mean that the agreement to arbitrate is somehow unenforceable) (citing *Captain D's, LLC v. McClenathan*, C.A. No. 2:06-0261, 2006 WL 3409757, at *3 (S.D. W. Va. Nov. 27, 2006) and *Reese v. Commercial Credit Corp.*, 955 F.Supp. 567, 570 (D.S.C. 1997) (rejecting plaintiff's argument that he was misled by paragraph on first page of Arbitration Policy that reaffirmed the at-will nature of the employment relationship as "no reasonable person could conclude that this paragraph somehow negates the mandatory nature of the Arbitration Policy")); *see also Microstrategy, Inc. v. Lauricia*, 268 F.3d 244, 248-49 (4th Cir. 2001) (observing that arbitration agreement and employment contract are distinct and concluding that arbitration agreement was valid and binding where the agreement provided that "I [employee] acknowledge that the policies and practices set out in this Handbook are not a contract of employment, and are not intended to imply a contractual relationship").

Based upon the foregoing, the undersigned finds that the language in the Open Door and in the plaintiff's employment applications that reaffirms the at-will nature of the plaintiff's employment relationship with the defendant does not negate in any way the parties' agreement to arbitrate.

The plaintiff next argues that the arbitration agreement is illusory because the defendant reserved to itself the ability to alter, amend, modify, or revoke the agreement (doc. 9 at 5-7). The plaintiff bases his argument on language in the September 2011 employment application in the section immediately preceding the signature line. The

section contains five paragraphs, and the second paragraph of that section contains the general statement relied upon by the plaintiff: "Should I be employed by the company, I agree to abide by the terms of this application and company rules and regulations, and the company has the right to amend, modify or revoke its rules and regulations at any time" (doc. 8-6, Chrisman decl. ¶ 6 & ex. C; doc. 14-1).

There are four other separate, distinct paragraphs in that section of the plaintiff's employment application, including a distinct paragraph that describes the defendant's Open Door in mutually binding and mandatory terms: The "Open Door requires as its last step the binding arbitration of employment disputes regarding legal protected rights" (*id.*). As argued by the defendant, the language in the employment application related to modifying the defendant's workplace rules and regulations has nothing to do with the agreement to arbitrate and does not create unilateral right by the defendant to revise a mutual waiver and agreement set forth in a separate document. Further, the document that details both the plaintiff's and the defendant's mutual and mandatory obligations concerning arbitration – i.e., the Open Door – is a separate, stand-alone document. Further, the Open Door contains a separate section entitled "Mutual waiver and agreement," which expressly requires the plaintiff and the defendant to arbitrate the claims described in the Agreement. Nothing in the Arbitration Agreement allows either party to unilaterally change the Agreement (doc. 8-6, Chrisman decl., ex. A) (". . . if you accept or continue your employment with Austin after [June 1, 1996], you agree to waive your right to a trial in a court of law, and you agree instead to resolve all legal claims against Austin through Open Door instead of through the court system. Austin likewise waives its right to trial in a court of law and agrees to resolve such disputes through Open Door . . . ."). Under South Carolina law, a mutual promise to arbitrate constitutes sufficient consideration to support a stand-alone arbitration agreement. *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th

9

Cir. S.C. 1997) (citing *Rickborn v. Liberty Life Insurance Co.*, 468 S.E.2d 292, 300 (S.C. 1996)).

Moreover, the plaintiff's reliance on *Cheek v. United Healthcare of the Mid-Atlantic, Inc.*, 835 A.2d 656, 661 (Md. 2003), a Maryland Court of Appeals case, to bolster his illusory argument is misplaced. In *Cheek*, the defendant reserved unfettered discretion to alter or amend the agreement in the arbitration clause itself. Looking at the four corners of the arbitration policy, the court concluded that the policy contained an illusory promise. Here, the plaintiff, unlike *Cheek*, fails to cite this court to any provision in the Open Door that would allow the defendant to modify or revoke its arbitration agreement as the Open Door is silent with respect to either party's ability to amend, revoke, or rescind its terms (doc. 8-6, Chrisman decl., ex. A). Because the plaintiff's challenge is not directed specifically to the arbitration provision in the stand alone Open Door, his argument that the agreement to arbitrate is illusory fails.

Having addressed the plaintiff's arguments in opposition to the motion, the court will now address whether the defendant has established the four requirements for compelling arbitration under the FAA: "'(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision [that] purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'" *Adkins*, 303 F.3d at 500-501(quoting *Whiteside*, 940 F.2d at 102). First, a dispute exists between the parties as evidenced by the existence of this lawsuit. Second, a written agreement exists that includes an arbitration provision that covers the dispute as the plaintiff's FMLA claims fall squarely within the "workplace disputes" to which the Open Door applies. Third, in *Allied-Bruce Terminix Companies v. Dobson*, the Supreme Court interpreted the FAA's use of the words "involving commerce" and determined that the phrase was meant to allow Congress to "exercise its Commerce Clause powers to the full"

and should be broadly interpreted. 513 U.S. 265, 273-75 (1995). Here, the defendant maintains its principal place of business in Texas and directs, controls, and coordinates its activities in other states, including South Carolina, from there (doc. 1-3, Chrisman decl. ¶ 4). Also, the parties agreed in their joint motion to stay the First Lawsuit that the Agreement is subject to the FAA. *See* C.A. No. 8:15-cv-3462-JMC-JDA, doc. 5. Fourth, the plaintiff's counsel has informed defense counsel that the plaintiff refuses to voluntarily arbitrate the dispute.

When an issue in a judicial proceeding is referable to arbitration, the FAA requires the court, upon the motion of a party, to stay the proceedings until that issue is arbitrated. 9 U.S.C. § 3. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2001). "[D]ismissal is a proper remedy," however, "when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir.2001). As it appears that all of the issues presented in the complaint are arbitrable, the instant action should be dismissed.

Lastly, pursuant to Federal Rule of Civil Procedure 41(d), the defendant seeks an award of attorney's fees and costs incurred in defending the plaintiff's First Lawsuit (doc. 8-1 at 9-10). Rule 41(d) provides:

> If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:
>
> (1) may order the plaintiff to pay all or part of the costs of that previous action; and
>
> (2) may stay the proceedings until the plaintiff has complied.

Fed. R. Civ. P. 41(d). As noted by the defendant, some courts have found that the rule also authorizes an award of attorney's fees (doc. 8-1 at 9). Since the filing of the defendant's motion, the Fourth Circuit Court of Appeals issued its decision in *Andrews v. America's Living Ctrs., LLC,* finding as follows:

11

> Rule 41(d) does not provide for an award of attorneys' fees as a matter of right; instead, a district court may award attorneys' fees under this rule only where the underlying statute provides for attorneys' fees. A court may also, within its discretion, award attorneys' fees where it makes a specific finding that the plaintiff has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons," a well-established exception to the American Rule.

No. 15-1658, 2016 WL 3536658, at *3 (4th Cir. June 28, 2016) (citations omitted).

As discussed above, the plaintiff filed a stipulation of dismissal without prejudice of the First Lawsuit on September 29, 2015, pursuant to Rule 41(a)(1)(A), to allow the parties to pursue arbitration (*see* doc. 8-3, correspondence dated 9/29/15; *see* First Lawsuit, doc. 6). Thereafter, the parties discussed settlement, but did not commence arbitration (doc. 9 at 3). The plaintiff then filed the same FMLA claims in the instant action as he filed in his First Lawsuit. According to the plaintiff, the Fourth Circuit's decision in *Lorenzo*, discussed above, was the impetus for the filing of the instant lawsuit (*id.* at 3-4).

The defendant seeks a total of $400.00 in costs for removal of the First Lawsuit and $1,752.00 in attorney's fees (a total of $2,152.00) as a result of the First Lawsuit (*see* doc. 8-4, Adams decl.). The plaintiff did not address this issue in his response to the defendant's motion (*see* doc. 9).

As directed by *Andrews*, the court must first consider whether the underlying statute includes attorney's fees. 2016 WL 3536658, at *4. The plaintiff originally brought suit under the FMILA, which provides for an award of attorney's fees for a prevailing plaintiff, but is silent as to a prevailing defendant. *See* 29 U.S.C. § 2617(a)(3); *Newton v. Suntrust Bank*, C.A. No. 6:05-cv-604-Orl-18DAB, 2006 WL 4826363, at *1-2 (M.D. Fl. Aug. 4, 2006) (As is clear, the FMLA provides for attorney's fees for prevailing *plaintiffs*. Defendant cites no case (and the Court's independent research has yielded none) where a prevailing Defendant was awarded fees under this provision.") (emphasis in original). Accordingly, the court must consider whether attorney's fees are warranted by the plaintiff's

behavior. *Andrews*, 2016 WL 3536658, at *4-5. The undersigned finds that the plaintiff's conduct in refiling the instant lawsuit based on counsel's good faith belief that the *Lorenzo* case controlled was not vexatious in the least, and thus attorney's fees are not warranted.

Furthermore, the undersigned finds that an award of costs is not warranted in this case. *See* Fed. R. Civ. P. 41(d) (stating that "the court . . . *may* order the plaintiff to pay all or part of the costs of that previous action . . . ." (emphasis added)). Here, the parties originally agreed to stay the First Lawsuit pending arbitration, and the stipulation of dismissal was only filed after the court so requested it (*see* doc. 8-3, correspondence dated 9/29/15). Accordingly, the undersigned recommends that the district court deny the defendant's request for attorney's fees and costs in defending the First Lawsuit.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, this court recommends that the defendant's motion to dismiss and compel arbitration (doc. 8) be granted and the defendant's request for attorney's fees and costs incurred in defending the First Lawsuit be denied.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

July 25, 2016
Greenville, South Carolina

13